**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **POPSOCKETS LLC** | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| **REARTH INC., and REARTH USA LLC** | ) | Case No. |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

1. Plaintiff PopSockets LLC ("PopSockets"), by its undersigned counsel, brings this Complaint against Defendants Rearth Inc. and Rearth USA LLC, collectively ("Rearth") for infringement of U.S. Patent Nos. 11,989,058 ("the '058 Patent," Exhibit 1) and 11,899,496 ("the '496 Patent," Exhibit 2).

## I. <u>THE PARTIES</u>

2. Plaintiff PopSockets LLC is a company established in Colorado having its principal place of business at 100 Technology Way, Suite 250, Broomfield, CO 80021.

3. On information and belief, Rearth Inc. is a company formed under the laws of South Korea with a place of business at 466 Gilju-ro, Bucheon-si, Gyeonggi-do 14556, South Korea. Rearth Inc. may be served through the Central Authority of South Korea under Article 5 of the Hague Service Convention. On information and belief, Rearth Inc. have used, sold, or offered to sell products and services, including the Accused Instrumentalities, in this judicial district.

4. On information and belief, Rearth USA LLC is a limited liability company formed under the laws of Texas who has a registered place of business at 740 F Ave., Ste. 302, Plano, TX, 75074. Rearth USA LLC may be served at their registered place of business at 740 F Ave., Ste. 302, Plano, TX, 75074. On information and belief, Rearth USA LLC have used, sold, or offered to sell products and services, including the Accused Instrumentalities, in this judicial district.

5. On information and belief, Rearth Inc. and Rearth USA LLC sell under the brand name "Ringke" and operate the associated Amazon and eBay stores.

## II. JURISDICTION AND VENUE

6. Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq.*).

7. Rearth Inc. is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

8. Personal jurisdiction exists generally over Rearth Inc. because Rearth Inc. has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Eastern District of Texas. Personal jurisdiction also exists over Rearth Inc. because it, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, makes available, and/or markets products within the State of Texas and the Eastern District of Texas that infringe one or more claims of the Patents-in-Suit. Further, on information and belief, Rearth Inc. has placed or contributed to placing infringing products into the stream of commerce, both directly and through intermediaries (including distributors, retailers, authorized dealers, sales agents, and other individuals or entities), knowing or understanding that such products would be sold and used in the United States, including in this District.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b). Venue is proper in this Court because Rearth Inc. is organized under the laws of a foreign jurisdiction. 28 U.S.C. § 1391(c)(3) provides that "a defendants not resident in the United States may be sued in any judicial district, and the joinder of such a defendants shall be disregarded in determining where the action may be brought with respect to other defendants." *See also In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018). Venue is also proper in this Court because on information and belief, Rearth Inc. has committed acts of infringement in this judicial district. 28 U.S.C. §§ 1391(b)(2).

10. Rearth USA LLC. is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

11. Personal jurisdiction exists generally over Rearth USA LLC because it has its principal place of business at 740 F Ave., Ste. 302, Plano, TX, 75074. In addition, on information and belief, Rearth USA LLC have used, sold, or offered to sell products and services, including the Accused Instrumentalities, in this judicial district.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b). Venue is proper in this Court because Rearth USA LLC is a resident of this judicial district. 28 U.S.C. §§ 1391(b)(1). Rearth USA LLC is a resident of this district because it has its principal place of business at 740 F Ave., Ste. 302, Plano, TX, 75074. 28 U.S.C. §§ 1391(c)(2). Venue is also proper in this Court because, on information and belief, Rearth USA LLC has committed acts of infringement in this judicial district. 28 U.S.C. §§ 1391(b)(2).

## III. <u>FACTUAL ALLEGATIONS</u>

### A. Background

13. PopSockets is one of the nation's leading providers of phone cases, grips, and mount accessories for handheld electronic devices as well as the exclusive provider of award-

winning and innovative POPSOCKETS brand products and its products are sold in stores and online throughout the country. PopSockets is well-known in the industry as the inventor of the innovative PopSockets® PopGrip® mobile device grip, which revolutionized the way people hold and interact with their mobile devices. Since the explosive success of its category-defining product, PopSockets has continued to develop cutting-edge products in the phone accessory space. By leveraging its design and engineering prowess beyond phone grips, PopSockets has created a comprehensive ecosystem of original accessory products.

14. The United States Patent Office has recognized PopSockets' innovative work in this industry by awarding PopSockets with a robust portfolio of patents covering its highly successful phone accessory products, which include phone cases, grip accessories, power accessories, and more. *See* https://www.popsockets.com/en-us/pages/intellectual-property.html?srsltid=AfmBOoq_Xy_7TWkXhH_DxPYNM_ldyQKm2QgYxgwXNwS2d4-UqGwFbCdC. Driven by the success of products embodying its patented inventions, PopSockets has grown rapidly in the last decade from a small Colorado startup to one of the world's leading phone accessory brands today, selling hundreds of millions of its innovative products in over 100 countries globally. PopSockets has been recognized as one of the World's Most Innovative Companies, and continues to invest substantial funds in research and development year after year, continuing to build on its reputation for inventive design. PopSockets' intentional investment in research and development has led to a number of successful inventions, including those captured in the Asserted Patents, as detailed below.

**B. The '058 Patent**

15. The '058 Patent is entitled "Docking Accessory Platform for Mobile Electronic Devices."

16. Claim 1 of the '058 Patent provides:

> **[1pre]** A docking accessory platform adapted to couple to a mobile electronic device, the platform comprising:
>
> **[1a]** a first docking connector portion comprising a first magnetic element configured to detachably attach to a second docking connector portion of a power accessory, wherein the second docking connector portion comprises a second magnetic element;
>
> **[1b]** a back portion opposite the first docking connector portion, the back portion configured to be secured against a back surface of the mobile electronic device;
>
> **[1c]** and a side portion configured to extend around at least a portion of a side of the mobile electronic device adjacent to the back surface, wherein the power accessory comprises an accessory body and an electronic assembly within the accessory body, wherein the electronic assembly comprising a battery and electronics operable to wirelessly transfer power through the platform, between the battery and the mobile electronic devices;
>
> **[1d]** and the first docking connector portion of the platform is further configured to detachably attach to a grip accessory comprising a third magnetic element.

17. PopSockets owns by assignment the entire right, title, and interest in and to the ’058 Patent. The ’058 Patent was filed as Application No. 18/388,182 on November 8, 2023 and assigned to PopSockets. The ’058 Patent issued on May 21, 2024 and claims priority to, among others, U.S. Application No. 15/852,518, filed on Dec. 22, 2017, Application No. 14/588,402, filed on Dec. 31, 2014 (now Pat. No. 10,019,034), Application No. 15/173,644, filed on June 14, 2016, Application No. 14/384,663, filed as Application No. PCT/US2013/030911 on Mar. 13, 2013 (now Pat. No. 9,367,090), as well as Provisional Application No. 61/922,294, filed on Dec. 31, 2013 and Provisional Application No. 61/610,575, filed on Mar. 14, 2012.

18. The ’058 Patent is generally directed at a docking platform for mobile devices that allows different types of docking accessories to independently attach and detach from the device "with at most a nominal increase in the effective magnitude of any one dimension of the mobile device." Ex. 1 at 3:15-26. The ’058 Patent explains that docking platforms for mobile devices have traditionally been housed on the edges of mobile devices; however, "[a] shortfall of housing a

docking connector on the edge of a mobile electronic device is that when the device is attached to docking accessories, the resultant system is generally inconvenient for transport." Ex. 1 at 1:46-49. Previous solutions have included, for example, building docking accessories into docking platforms, and securing the entire system onto the back of the device. *Id.* 1:66-3:11. While these solutions have made transport slightly more convenient, they have still increased the effective size of the device in multiple dimensions. *Id.* The docking platform disclosed by the '058 Patent attaches to the back face of the phone, and allows certain kinds of accessories to detachably attach to the platform while it is coupled to the device, for example, through magnetic elements.

19. Figure 8 illustrates an example of a docking accessory platform with the platform configured as a case attached to the mobile electronic device, with two grip accessories detachably attached to the platform:




FIG. 8

'058 Patent., Figure 8. As shown, Figure 8 depicts an embodiment with docking platform 2 coupled to a mobile device 1. As the '058 explains, "[o]ne or more embodiments of the present invention are directed to a docking platform system comprising a docking platform and compatible electronic and/or mechanical docking accessories, the docking platform configured to detachably attach to a mobile electronic device and further configured to enable detachable attachment of a variety of docking accessories." Ex. 1 at 16:52-59. The docking platform disclosed by the '058

Patent thus allows for the docking of different kinds of accessories, including, for example, power accessories and grip accessories.

### C. The ’496 Patent

20. The ’496 Patent is entitled “Docking Connector Platform for Mobile Electronic Devices”

21. Claim 1 of the ’496 Patent provides:

> **[1pre]** A detachable docking accessory system, comprising:
>
> **[1a]** a mobile electronic device;
>
> **[1b]** a platform adapted to couple to the mobile electronic device, the platform including a first docking connector portion and a back portion opposite the first docking connector portion, the back portion configured to attach to a [b]ack[1] surface of the mobile electronic device;
>
> **[1c]** a power docking accessory comprising an accessory body;
>
> **[1d]** a second docking connector portion of the accessory body, the first and second docking connector portions configured to form a detachable attachment to secure the accessory body to the platform; and;
>
> **[1e]** an electronic assembly within the accessory body, the electronic assembly comprising electronics operable to inductively transfer power between the accessory body and the mobile electronic device.

22. PopSockets owns by assignment the entire right, title, and interest in and to the ’496 Patent. The ’496 Patent was filed as Application No. 18/202,847 on May 26, 2023 and assigned to PopSockets. The ’496 Patent issued on February 13, 2024 and claims priority to, among others, U.S. Application No. No. 16/745,226, filed on Jan. 16, 2020, Application No. No. 15/723,506, filed on Oct. 3, 2017 (now Pat. No. 10,571,964), Application No. 14/302,203, filed on Jun. 11,

[1] *See* Ex. 3, Notice of Correction

2014 (now Pat. No. 9,804,636). The ’496 Patent claims partial priority to Application No. PCT/US2013/030991, filed on Mar. 13, 2013. as well as Provisional Application No. 61/833,634, filed on Jun. 11, 2013, and Provisional Application No. 61/610,575, filed on Mar. 14, 2012.

23. The ’496 Patent is generally directed to a detachable docking accessory system for mobile phones. Figure 29 shows a variety of different embodiments of the claimed system including a docking platform 102 “configured for flush mounting an accessory to the back surface of mobile electronic device 101” (Ex. 2, 25:35-45; Fig. 29):




FIG. 29

As explained by the ’496 Patent, “The docking platform enables docking accessories to attach to the mobile device without significantly increasing the effective carrying size of the mobile device by enabling the volumes of attached docking accessories to be distributed across a large portion of the selected surface.” Ex. 2 10:20-24. The claimed system allows for the flush mounting of docking accessories, including accessories “configured to electrically connect to the

mobile electronic device." Ex. 2, 12:9-16. For example, FIG. 12A shows an embodiment wherein a mobile electronic device is connected with a docked supplemental battery accessory:




FIG. 12A

Similarly, Fig. 34 shows "an exemplary battery function 254 performed by docking platform 2, 102 or mobile electronic device 101. After docking platform 2, 102 or mobile electronic device 1, 101 establishes communications with supplemental battery accessory 146, docking platform 2, 102 or mobile electronic device 1, 101 may display battery function 254." Ex. 2 at 26:64-27:3; FIG. 34:




FIG. 34

**D. Rearth Infringing Activities**

24. Defendants Rearth have built a business around selling low-cost mobile accessories through online marketplaces, such as Amazon, including accessories that mimic the functionality and design of innovative products developed by industry leaders such as PopSockets. While Rearth Inc. is based in South Korea, Rearth markets and sells a wide range of smartphone accessories to consumers in the United States including through their subsidiary Rearth USA LLC. These products directly compete with PopSockets' products by embodying its patented technologies. Rearth makes, uses, sells, offers to sell, and/or imports into the United States various phone accessories for smartphones such as iPhones, Samsung Galaxy, and Google Pixel phones.

25. On information and belief, Rearth makes, uses, sells, offers to sell, and/or imports within this District and elsewhere in the United States, without authority, smartphone cases that infringe one or more of the asserted patents (the "Accused Phone Case Products"). The Accused

Phone Case Products include, without limitation, any Rearth MagSafe ®/Qi2 compatible phone case made, used, sold and/or imported into the United States by Rearth. By way of non-limiting example, the Accused Phone Case Products include the "Fusion Magnetic", "Onyx Magnetic", "Fusion-X Magnetic", and "Silicone Magnetic" lines of cases currently and/or previously sold by Rearth.

26. On information and belief, Rearth makes, uses, offers to sell, and/or imports within this District and elsewhere in the United States, without authority, smartphone power accessories that infringe one or more of the asserted patents (the "Accused Charging Products"). The Accused Charging Products include, without limitation, any Rearth MagSafe®/Qi2 compatible phone charger made, used, sold and/or imported into the United States by Rearth. By way of non-limiting example, the Accused Charging Products include the "Ringke Peltier Magnetic Car Charger Mount", "Ringke Qi2 25W 3-in-1 Magnetic Wireless Charging Folding Stand" and "Ringke [3-In-1] Qi2 Multi-Use Wireless Charging LED Ambient Minimalist Stand" currently and/or previously sold by Rearth.

27. Rather than building a successful brand by investing in research and development to create innovative designs of its own, Rearth profits by offering cheaper constructions of the successful products of others, including PopSockets. Rearth has capitalized on the incredible success of PopSockets' brand and innovative product design by distributing vast quantities of infringing products through online marketplaces such as Amazon. These actions have caused and continue to cause harm to PopSockets by diverting sales and eroding the value of its patented technology. At no point has Rearth contacted PopSockets to request a license to the intellectual property it uses in its Accused Phone Case and Charging Products. By this action, PopSockets seeks to stop Rearth's patent infringement and obtain appropriate compensation for that infringement.

## IV. FIRST CLAIM FOR RELIEF – ’058 Patent

28. PopSockets re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

29. On information and belief, Rearth directly infringed (literally and/or under the doctrine of equivalents) and is currently infringing at least one of the claims of the ’058 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Phone Case Products, and other products with materially the same structure in relevant part. For example, and as shown below, the Accused Phone Case Products and other products with materially the same structure and operating mechanisms in relevant part infringe at least Claim 1 of the ’058 Patent. Rearth’s “Ringke Onyx for iPhone 17e Case and iPhone 16e Case [Compatible with MagSafe] Oil & Dirt Resistant, Individual Lens Covers for Cameras, Non-Slip Enhanced Grip Lightweight Cover - Magnetic Dark Green” is an exemplary accused product. https://www.amazon.com/ Ringke-Onyx-Compatible-Individual-Lightweight/ dp/ B0DWFXTZP6?ref_=ast_sto_dp&th=.

30. To the extent the preamble is limiting, the Accused Phone Case Products are docking accessory platforms adapted to couple to a mobile electronic device. On information and belief, the Accused Phone Case Products are designed to couple to mobile electronic devices such as iPhones. The products comprise a first docking connector portion comprising a first magnetic element configured to detachably attach to second docking connector portion of a power accessory, wherein the second docking connector portion comprises a second magnetic element. For example, Rearth advertises that the Accused Phone Case Products have “Powerful Magnetic Strength.” *See, e.g.*, https://www.amazon.com/Ringke-Onyx-Compatible-Individual Lightweight/dp/B0DWFXTZP6?ref_=ast_sto_dp&th=1 (*id.*):




31. As seen above, the Accused Phone Case Products are configured to detachably attach to a power accessory. The Accused Phone Case Products advertising also reveals the magnets used for magnetic attachment within the case. *See, e.g.*, https://www.amazon.com/Ringke-Onyx-Compatible-Individual Lightweight/dp/B0DWFXTZP6?ref_=ast_sto_dp&th=1 (*id.*):




32. Rearth further advertises that the Accused Phone Case Product "[e]nsures a secure MagSafe attachment through powerful N52 grade neodymium rare earth magnets." *See, e.g.*, https://www.ringkestore.com/products/iphone-17e-case-fusion-magnetic (*id.*):




33. On information and belief, the Accused Phone Case Products comprise a back portion opposite the first docking connector portion, the back portion to be secured against a back

surface of the mobile electronic device. The first docking connector portion of the Accused Phone Case Products is configured to secure against the back surface of the device. *See, e.g.*, https://www.amazon.com/Ringke-Fusion-Compatible-Discoloration-Shockproof/dp/B0FL8SW11R?ref_=ast_sto_dp&th=1 (*id.*):




34. As pictured above, the Accused Phone Case Products also comprise a side portion configured to extend around at least a portion of a side of the mobile electronic device adjacent to the back surface. *See id.*

35. The Accused Phone Case Products are configured to detachably attach to a second docking connector portion of a power accessory. The Accused Phone Case Products can detachably attach to a power accessory comprising an accessory body and an electronic assembly within the accessory body, wherein the electronic assembly comprises a battery and electronics operable to wirelessly transfer power through the platform, between the battery and the mobile

electronic device. For example, Rearth advertises that the Accused Phone Care Products are "perfect for all kinds of MagSafe accessories" including "charging" accessories due to its "powerful magnetic strength." https://www.amazon.com/Ringke-Compatible-Discoloration-Resistant-Shockproof/dp/B0DQDZZRLH?ref_=ast_sto_dp&th=1. This "powerful magnetic strength" allows the Accused Phone Case Products to detachably attach to power accessories that comprise an accessory body and an electronic assembly within the accessory body, wherein the electronic assembly comprises a battery and electronics operable to wirelessly transfer power through the platform, these power accessories include MagSafe power banks. *See* https://youtu.be/IT-AfRHJrZc?si=XdzdDomhOsntbizr&t=166 (demonstrating that an Accused Phone Case Product works with a MagSafe power bank); https://casebx.com/blogs/reviews/ringke-iphone-case-reviews ("The magnetic hold [of the Accused Phone Case Product] is strong enough to support heavy accessories like MagSafe power banks.").

36. On information and belief, the first docking connector portion of the Accused Phone Case Products is further configured to detachably attach to a grip accessory comprising a third magnetic element.




37. As pictured above, Rearth advertises and sells magnetic phone ring and stand grip accessories intended to be used with the Accused Phone Case Products. *See, e.g.*, https://www.amazon.com/Ringke-Fusion-Compatible-Discoloration-Shockproof/dp/B0FL8SW11R?th=1 (Accused Phone Case Product listing page suggesting the case is "perfect" for use with a Rearth magnetic phone grip accessory); https://www.ringkestore.com/products/ringke-smart-ring-magnetic (The identified Rearth magnetic phone grip accessory) (*id.*):




38. Rearth specifically directs consumers to use the magnetic grip accesory with Accused Phone Case Products for "best results." *See* https://www.ringkestore.com/products/ringke-smart-ring-magnetic ("For best results, use with Ringke Mangetic case or a standard case with the Ringke Magnetic Plate accesory") (*id.*):




39. Rearth also advertises the magnetic grip accessories being used with Accused Phone Case Products. *See e.g.*, https://www.ringkestore.com/products/ringke-smart-ring-magnetic (*id.*):




40. Rearth's magnetic grip accessories are advertised as helping to "boost your grip" and "functions as a handy finger ring." https://www.amazon.com/Ringke-Magnetic-Foldable-Two-Sided-Powerful/dp/B0GGK7JPCT?ref_=ast_sto_dp&th=1 (*id.*):




41. The Accused Phone Case Products are configured to detachably attach to the pictured accessory and other grip accessories comprising a third magnetic element. *See e.g.*,

https://www.ringkestore.com/products/ringke-smart-ring-magnetic ("The magnetic attachment lets you remove and re-attach as many times as you need."(*id.*):




42. On information and belief, Rearth also indirectly infringes the '058 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Rearth's customers and end-users, in this District and elsewhere in the United States. For example, on information and belief, Rearth has induced, and currently induces, the infringement of the '058 Patent through its affirmative acts of selling, offering to sell, distributing, and/or otherwise making available the Accused Phone Case Products and other materially similar products that infringe the '058 Patent. On information and belief, Rearth provides advertisements, tutorials, instruction manuals, and/or other materials that encourage and facilitate infringing use of the Accused Phone Case Products and other materially similar products by users in a manner that it knows or should have known would result in infringement and with the intent of inducing infringement. *See, e.g.*, https://www.amazon.com/Ringke-Fusion-Compatible-Discoloration-Shockproof/

dp/B0FL8SW11R?th=1. On information and belief, Rearth is encouraging and facilitating infringement of the ’058 Patent by others. For example, on information and belief, Rearth sells or otherwise provides the Accused Phone Case Products to distributors or U.S.-based sales entities knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States and/or import the products into the United States in an infringing manner.

43. On information and belief, Rearth also indirectly infringes the ’058 Patent, as provided in 35 U.S.C. § 271(c), contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. For example, on information and belief, Rearth has contributed to, and currently contributes to, Rearth’s customers infringement of the ’058 Patent through its affirmative acts of selling and offering to sell, either directly or through its distributors, in this District and elsewhere in the United States, the Accused Phone Case Products and other materially similar products that infringe the ’058 Patent. On information and belief, the Accused Phone Case Products and other materially similar products have no substantial noninfringing use, and constitute a material part of the patented invention. On information and belief, Rearth is aware that the product that includes the Accused Phone Case Products and other materially similar products may be covered by one or more claims of the ’058 Patent. On information and belief, the use of the product that includes the Accused Phone Case Products and other materially similar products infringes at least one claim of the ’058 Patent.

44. Rearth’s infringement of the ’058 Patent has damaged and will continue to damage PopSockets. Rearth has had notice of the ’058 Patent since at least the date of this Complaint, and on information and belief has had knowledge and/or notice of the ’058 Patent earlier than this via PopSockets’ website(s) and patent markings. For example, PopSockets’ website includes a list of intellectual property it owns, including the ’058 Patent. *See* https:// www.popsockets.com/en-us/pages/intellectual-property.html. PopSockets’ website also includes information about which

PopSockets products are covered by its intellectual property, and it specifies that PopSockets MagSafe phone cases are covered by, among others, the ’058 Patent. *Id.* On information and belief, Rearth was or should have been aware of the patent markings on PopSockets’ website. Rearth’s infringement of the ’058 Patent has been continuing and willful. Rearth continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Rearth knew or should have known that its actions constituted an unjustifiably high risk of infringement.

## V. SECOND CLAIM FOR RELIEF – ’496 Patent

45. PopSockets re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

46. On information and belief, Rearth directly infringed (literally and/or under the doctrine of equivalents) and is currently infringing at least one claim of the ’496 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Phone Case Products, the Accused Charging Products, and other products with materially the same structures in relevant parts. For example, and as shown below, the Accused Phone Case Products, Accused Charging Products, and other products with materially the same structures in relevant parts infringe at least Claim 1 of the ’496 Patent. Rearth’s “Qi2 Peltier Magnetic Car Charger Mount” is an exemplary accused product. https://www.ringkestore.com/products/ringke-peltier-magnetic-car-charger-mount?_pos=1&_sid=fb615081e&_ss=r.

47. To the extent the preamble is limiting, the Accused Phone Case Products and Accused Charging Products are a detachable docking accessory system designed exclusively for use with a mobile electronic device. The Accused Phone Case Products are designed to attach to a mobile electronic device. The Accused Phone Case Products include a first docking connector portion, namely, a magnetic array built into the case. *See, e.g.*, https://www.amazon.com/Ringke-

Onyx-Compatible-Individual-Lightweight/dp/B0DWFXTZP6?ref_=ast_sto_dp&th=1; https://www.amazon.com/Ringke-Fusion-Compatible-Discoloration-Shockproof/dp/B0DF8DYKQT?ref_=ast_sto_dp&th=1 (*id.*):




48. The Accused Phone Case Products also include a back portion opposite the magnetic array that is configured to attach to the back surface of the mobile device. *See, e.g.*, https://www.amazon.com/Ringke-Fusion-Compatible-Discoloration-Shockproof/dp/B0FL8SW11R?ref_=ast_sto_dp&th=1 (*id.*):




49. On information and belief, the Accused Charging Products comprise an accessory body and a second docking connector portion, namely, a magnetic array allowing them to detachably attach to the Accused Phone Case Products. *See, e.g.*, https://www.amazon.com/Ringke-Peltier-Magnetic-Charger-Mount/dp/B0DP5LV94Q?ref_=ast_sto_dp (*id.*):




50. On information and belief, the Accused Charging Products also comprise an electronic assembly within the accessory body comprising electronics operable to inductively transfer power between the products and the mobile device. *See, e.g.*, https://www.ringkestore.com/products/ringke-peltier-magnetic-car-charger-mount?_pos=3&_sid=59d061e8e&_ss=r (*id.*):



51. For example, the Accused Charging Products are marketed as being compatible with the Accused Phone Case Products or other materially similar products that infringe the '496 patent. *See, e.g.*, https://www.amazon.com/Ringke-Peltier-Magnetic-Charger-Mount/dp/B0DP5LV94Q?ref_=ast_sto_dp (*id.*):



Ringke Qi2 Peltier Magnetic Car Charger Mount [Compatible with MagSafe] Car Phone Holder with Cooling Technology, Super Fast Qi2 Charger Designed for iPhone 17 Pro Max Plus 16 15 14 13 12 11 - Black

Visit the Ringke Store

3.7 (13)

$69.99

Get $50 off instantly: Pay $19.99 ~~$69.99~~ upon approval for Amazon Visa. No annual fee.

FREE Returns

| | |
|---|---|
| **Brand** | Ringke |
| **Color** | Black |
| **Compatible Devices** | Smartphones |
| **Compatible Phone Models** | iPhone 17 Pro Max, iPhone 17 Pro, iPhone 17, iPhone Air, iPhone 16 Pro Max, iPhone 16 Pro, iPhone 16 Plus, iPhone 16, iPhone 15 Pro Max, iPhone 15 Pro, iPhone 15 Plus, iPhone 15, iPhone 14 Pro Max, iPhone 1… See more |
| **Mounting Type** | Vent |

**About this item**

- Compatible with MagSafe cases and devices
- Fast Qi2 wireless charging up to 15W speed
- Peltier-powered cooling fan reduces device heat generation
- Powerful magnet to secure your phone while driving
- Comes included with a Type-C to Type-C cable

› See more product details

52. On information and belief, Rearth sells both the Accused Charging Products and Accused Phone Case Products to end-users to combine with a mobile device to receive the benefit of Rearth's products. On information and belief, Rearth also sells the Accused Charging Products to end-users to combine with a mobile device and platform component provided by a third-party to receive the benefit of the Accused Charging Products. On information and belief, Rearth also sells the Accused Phone Case Products to end-users to combine with a mobile device and power accessory component provided by a third-party to receive the benefit of the Accused Phone Case

Products. On information and belief, Rearth directs its end-users to combine the components together to use the claimed system by advertising both the Accused Charging Product and the Accused Phone Case Products being used together. *See, e.g.*, https://www.amazon.com/Ringke-Peltier-Magnetic-Charger Mount/dp/B0DP5LV94Q?ref_=ast_sto_dp (*id.*):




53. On information and belief, Rearth also indirectly infringes the ’496 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Rearth’s customers, in this District and elsewhere in the United States. For example, on information and belief, Rearth has induced, and currently induces, the infringement of the ’496 Patent through its affirmative acts of selling, offering to sell, distributing, and/or otherwise making available the Accused Phone Case Products and the Accused Charging Products and other materially similar products that infringe the ’496 Patent. On information and belief, Rearth provides specifications, instruction manuals, tutorials, and/or other materials that encourage and facilitate infringing use of the Accused Charging Products and other materially similar products by customers in a manner that it knows

or should have known would result in infringement and with the intent of inducing infringement. *See, e.g.*, https://www.amazon.com/Ringke-Peltier-Magnetic-Charger-Mount/dp/B0DP5LV94Q?ref_=ast_sto_dp . On information and belief, Rearth is encouraging and facilitating infringement of the '496 Patent by others. For example, on information and belief, Rearth sells the Accused Phone Case Products and the Accused Charging Products with the knowledge and intent that they will be used together with a mobile electronic device. Rearth suggests to customers that the Accused Products should be used together by advertising both the Accused Charging Product and an Accused Phone Case Product being used together. *See, e.g.*, https://www.amazon.com/Ringke-Peltier-Magnetic-Charger Mount/dp/B0DP5LV94Q?ref_=ast_sto_dp (*id.*):




54. On information and belief, Rearth also indirectly infringes the '496 Patent, as provided in 35 U.S.C. § 271(c), contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States. For example, on information and

belief, Rearth has contributed to, and currently contributes to, Rearth's customers' infringement of the '496 Patent through its affirmative acts of selling and offering to sell, either directly or through its distributors, in this District and elsewhere in the United States, the Accused Charging Products, Accused Phone Case Products, and other materially similar products that infringe the '496 Patent. On information and belief, the accused products and other materially similar products have no substantial noninfringing use, and constitute a material part of the patented invention. On information and belief, Rearth is aware that the Accused Phone Case Products and Accused Charging Products have no use without a mobile electronic device. Rearth markets the Accused Charging Products with images showing the products used as part of a system comprising a mobile device, case, and power accessory. *See, e.g.*, https:// www.ringkestore.com/products/ringke-peltier-magnetic-car-charger-mount?_pos=3&_sid=59d061e8e&_ss=r (*id.*):




55. Rearth's infringement of the '496 Patent has damaged and will continue to damage PopSockets. Rearth has had notice of the '496 Patent since at least the date of this Complaint, and on information and belief has had knowledge and/or notice earlier than this via PopSockets' website(s) and patent markings. For example, PopSockets' website includes a list of intellectual

property it owns, including the '496 Patent. *See* https://www.popsockets.com/en-us/pages/intellectual-property.html. PopSockets' website also includes information about which PopSockets products are covered by its intellectual property, and it specifies that PopSockets MagSafe phone cases and PopSockets MagSafe power products are covered by, among others, the '496 Patent. *Id.* On information and belief, Rearth was or should have been aware of the patent markings on PopSockets' website. Rearth's infringement of the '496 Patent has been continuing and willful. Rearth continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Rearth knew or should have known that its actions constituted an unjustifiably high risk of infringement.

## VI. DEMAND FOR JURY TRIAL

56. Pursuant to Federal Rule of Civil Procedure 38(b), PopSockets hereby demands a trial by jury on all issues triable to a jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, PopSockets respectfully requests that this Court enter judgment in its favor ordering, finding, declaring, and/or awarding PopSockets relief as follows:

A. that Rearth infringes the Patents-in-Suit;

B. all equitable relief the Court deems just and proper as a result of Rearth's infringement;

C. an award of damages resulting from Rearth's acts of infringement in accordance with 35 U.S.C. § 284;

D. that Rearth's infringement of the Patents-in-Suit is willful;

E. enhanced damages pursuant to 35 U.S.C. § 284;

F. that this is an exceptional case and awarding PopSockets its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G. an accounting for acts of infringement and supplemental damages, without limitation, prejudgment and post-judgment interest; and

H. in the alternative to an award of damages under 35 U.S.C. § 284, an order pursuant to 35 U.S.C. § 283 permanently enjoining Rearth, its distributors, officers, agents, servants, employees, attorneys, instrumentalities and those persons in privity, active concert or participation with them, from further acts of direct and/or indirect infringement of the Patents-in-Suit including the manufacture, sale, offer for sale, importation and use of the infringing products.

I. such other equitable relief which may be requested and to which PopSockets is entitled.

Dated: August 24, 2026

Respectfully submitted,

*/s/ Claire Abernathy Henry*

Ian Washburn (*pro hac vice* forthcoming)
iwashburn@irell.com
Andrew Strabone (*pro hac vice* forthcoming)
astrabone@irell.com
N. Isabella Chestney (*pro hac vice* forthcoming)
ichestney@irell.com
Matthew Corey (*pro hac vice* forthcoming)
mcorey@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Of Counsel:
Claire Abernathy Henry
State Bar No. 24053063
claire@millerfairhenry.com
Garrett Parish
SBN 24125824
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604

(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

***Attorneys for Plaintiff PopSockets LLC***